All right, welcome back. We're ready for the next argument on calendar, which is Bacon v. Woodward, case number 22-35611. And we've got split time for the appellees. All right, we've got Mr. Arnold back at the podium, so go ahead. Thank you, Your Honor. Nathan J. Arnold, Arnold and Jacobowitz for the appellants. This case is substantially similar to the case from earlier this morning. This one, however, is unquestionably an as-applied challenge. I represent a group of firefighters who were terminated for their objection to receive a vaccination, despite a mix of both religious and medical exemptions that were granted, but, again, no accommodation provided. Can you give me the numbers on this case as far as how many were requested and what happened with those religious exemptions? Yes, Your Honor. I believe of these plaintiffs, all but three sought religious exemptions. The exemptions were accepted by the city as sincere. In other words, they conceded that my clients did have legitimate religious beliefs, but none of them were accommodated. And that includes folks who were trained dispatchers who could have been taken out of the field and simply put to dispatch where they could have been isolated. This is another case, as we discussed earlier this morning, Your Honor, where the whole process was a sham. These were predetermined louder-mail hearings. Reasons were not given why they could not be accommodated. And, you know, we know from the recent case of Groffers to Joy, an undue burden is a, quote, substantial increased cost in relation to conduct of the particular business, end quote. Now, the city of Spokane has yet to argue or articulate how having a few unvaccinated firefighters in the field, much less some of them reassigned to dispatch, would result in a net saving of lives. A fire department's business is saving lives. And, you know, this, of course, gets into factual issues. We're on Rule 12 again. But what would have been nice to be able to explore and discover is, what would the actual net effect be of having a handful of firefighters remain unvaccinated or a handful of firefighters reassigned to dispatch or a handful of firefighters on suspension without pay until the emergency ceases? And emergencies by the very nature, and this affects the last case we're talking about as well, but an emergency, by definition, has a temporal limit. Have any of your clients actually been terminated? Yes. These clients were terminated, Your Honor. I thought the complaint said they would be fired. And they were, ultimately, Your Honor. During the complaint, this, again, was a case that was brought prior to enforcement. We attempted to get an injunction, keep them in their jobs, and we were unsuccessful, Your Honor. And... So what were the accommodations that were requested that were not granted, or what were the accommodations that were offered that were not acceptable? I don't believe any accommodations were offered at all, Your Honor. I would have to look back at the record, but my recollection is there was no accommodation offered whatsoever. Now, ones that were suggested, masking, testing, continuing to follow social distancing protocols. For example, Mr. Barker had a serious medical condition that made it beyond inadvisable. I'm sorry. I actually had Mr. McCain in mind. He has a rare bleeding disorder, and his doctors told him, you know, don't take this. Now, so he has a claim under the ADA, of course, not under a religious basis, but he could have been reassigned to dispatch. He was not. This is another example where this specific agency, the city of Spokane, said, we agree that you have a legitimate religious belief, but we don't care. We're not going to accommodate you, and we're not going to tell you why. This case is particularly interesting because I would suggest to the court they can't even clear a rational basis. The reason for that is that the city of Spokane has a joint service agreement with all of the surrounding fire departments. There's three or four that surround the city, and those firefighters were accommodated at those departments. So there were firefighters operating in the city limits of Spokane without vaccination. Correct. We're still, Your Honor. And they were, wait, so they were, but they were hired by a different fire department. Correct, Your Honor. So, for example, the county has a separate fire department that its territory abuts the city, but there's a joint. So the county was giving exemptions. Correct. But the city was not. That's correct, Your Honor. And, you know, one of the things, this is not a rational basis approach, but a strict scrutiny approach, one of the things we look at is what do other jurisdictions do? And when it's the jurisdiction next door, that should be particularly persuasive. Well, I think the other way it goes to your case is, I mean, already you have the cat's out of the bag, if you will. I mean, the theory here was we're going to impose this on everybody, and that wasn't being done. And it's actually significantly worse than that, Your Honor, because the Spokane Fire Department is not a full-service fire department. In other words, they do not have their own ambulances. So the city of Spokane contracts with a company called AMR. AMR did not have a vaccine requirement. So one of my clients, for example, was able to get a job with AMR as an EMT, unvaccinated, working in the city limits of Spokane, doing essentially the same job. So when we look at the burden on the city, here's the same individual. Now he's lost his city fire job. He's lost his pensions. He's lost, you know, everything that he has worked for with the city to take a lesser-paying job doing the same tasks with the same populations in and out of the same hospitals from a private employer, because that employer elected to interpret the governor's mandate a different way than the city did. So we have – oh, excuse me. So can you go through the numbers on this? And this, again, this was on a motion to dismiss, right? Correct, Your Honor. And so – but as far as – how many clients – how many plaintiffs are there in this case? You said all but three sought a religious exemption. There were 100 in the other one, right? I believe I have 25 here, Your Honor. So there's 25 here. Twenty-two of them sought a religious exemption. They were granted but then still required to get the vaccine. Correct, or lose their job, and in this case lost their job. Okay. And I should, to be clear with the court, there may have – between the time we filed this case and the terminations, there may have been a couple that ultimately capitulated to the city's insistence. But in any event, they should not have had to. They got – so some of the – but at least there's – so there were 22 who got a religious exemption. They were all required to get the vaccine. Of those 22, maybe two or three of them, it sounds like, actually just said, fine, I'll get the vaccine. I believe those numbers are correct, Your Honor. We could certainly supplement the precise figures, but I want to be candid on that one. Yeah. Can I take a minute and go to the due process claim? What due process rights do you claim were required? So under RCW 4108090, our city firefighters in the state of Washington can only be terminated for a specific cause. Not listed among that is take an experimental vaccine or lose your job. And then, of course, under Loudermill, we have an obligation for an agency or an employer. Now, they were given Loudermill hearings, but your argument is those were a sham. They were just predetermined. Correct, and that's what we pled, and we're here under Rule 12. And the case law is clear that a predetermined Loudermill is not. As you know, I mean, conclusory allegations aren't necessarily enough. So what did what did you actually allege in the complaint that showed that these were a sham? So we could go back to example. For example, Mr. McCann, who is a qualified dispatch individual at his Loudermill, someone should have articulated to him why he could not go to dispatch. And it has to be more than because you won't get vaccinated. Right. That's circular logic where how is Mr. McCann's failure to vaccinate advance the government purpose to or in this case their business of saving lives when he could just be. But I don't understand how that relates to the due process claim. What are you claiming was sham? You're saying that he wasn't given an explanation at the end of the day. That was the sham. So there's two two separate things. One is a lack of explanation, which does not then allow the employee to substantively respond. And so and that's the point of a Loudermill hearing. The point of Loudermill is I, as employer, allege X. Come in, tell us your side of the story. Are there mitigating circumstances? You know, were you late to work this many times because your car broke down? My point is, I thought that those hearings were given. So I want to know why you think you're just saying they weren't able to bring up these these questions at the hearing across the board. None of the suggested accommodations were taken for a single person, which I would suggest is more than conclusory. That is evidence that it was, in fact, predetermined. And a predetermination ahead of a Loudermill is not constitutionally acceptable. What's the evidence of predetermination? That the outcome was exactly the same for every single person, despite differences amongst them. OK. And then as to the Title seven and 88, how many did you distinguish it out? How many of your 25 plaintiffs have Title seven and 88 claims? So three of them had 88 claims. There are specifics in the complaint. Mr. McCann, for example, has this rare bleeding disorder. Andrea Kern Camp is another one that comes to mind. And then Mr. Barker is another one. Mr. Barker actually took the first dose of the vaccine and had an adverse reaction. And his medical professional said, do not take the second one. And the city of Spokane said too bad. You're fired. OK, so it seems like the. So is it is is it the case that the of your 25 clients, the three that they're in two different buckets? You've got 22 there in the RFRA or the excuse me, the the the free exercise clause bucket. And then three that are in the 88 bucket. Or is there overlap between them? Well, there is going to be some overlap in that. The Washington law against discrimination would cover all of them. I do wish we were under RFRA, Your Honor. Unfortunately, I don't believe we are. So those who and let me I'm looking at my pleading right now. I believe there was a request by one of the three also on a religious basis. But I'd have to go back and check the pleading, Your Honor. But meaning you think all 25 of yours have 88 claim or Title seven claims because of what you're claiming is religious discrimination. I believe that one of the three would have a religious discrimination claim in addition to an 88 claim. But in any event, they would all be covered under WALAD as well. But the problem with the Title seven and 88 is that you don't have. I mean, number one, did did you exhaust these claims? Did you file a claim with the EOC? No, Your Honor. There wasn't time to do that. And there is case law that shows that you can get. And this is in our briefing. You can get prospective relief where there's a pending Title seven threat. And then it can be. It can be cured after the fact. Did you let that in your complaint? Or you think you didn't need to allege it because I don't believe it's alleged in the complaint. Your Honor, has it been cured? I believe it has been cured. I couldn't say, Your Honor, that's been cured for every single plaintiff. And unless you have other questions, I will reserve more time than last time. Thank you. Thank you, Judge. Thank you. Good morning. May it please the Court, my name is Chad Mitchell. My co-counsel is Selby Brown. We represent the defendants, the City of Spokane, Mayor Woodward, and Fire Chief Schaefer.  First, why Laudermill does not apply here and why the hearings that they did receive were not a sham. Second, why the City's application, and this is your applied cases that you asked for earlier this morning, Your Honors. Why the City's application of the Governor's proclamation passes constitutional muster under the First Amendment. And why the District Court properly did not allow leave to mend because of the prejudice. So, Laudermill hearings are not required here. First, this argument was waived by the plaintiffs. They did not raise it below. They did not put in front of Judge Rice any argument. They didn't raise a procedural due process claim at all? They raised it in their complaint, Your Honor. They didn't bring it up below? We moved for a motion for judgment on the pleadings, and we said Laudermill does not apply, and they did not respond to that with an argument why Laudermill applied. So, Judge Rice agreed with us. Laudermill doesn't apply, and here's why it doesn't apply. The Governor's proclamation was a law of general applicability, and I think it's important we're under the procedural due process claim right now. It requires notice, time to comply. That's Lone Star Security and Video v. Los Angeles and USV Lock. Now, unlike Laudermill, the proclamation impacted more than 6,500,000 employees in the state of Washington. So, this is not a Laudermill case like Justice White wrote about in the cases before him in Laudermill. Still gave hearings anyway, right? We did, or, well, I don't want to, I mean. We did. We did, and I'll get into that because the EEOC and under Title VII, there's an accommodation dialogue that needs to happen, and we actually referred to them as Laudermill hearings out of an abundance of caution, but they're not legally required under the law. In fact, plaintiffs have not cited to this court a single case that says in an accommodations process you have to have a Laudermill hearing because it's a completely different process than someone coming and saying, you're going to terminate me, maybe it's for cause, maybe it's a layoff. Here's why we're going to terminate you. Let's hear your side of the story. That's what was at issue for the two employees who were fired in Laudermill, and that's not the case here. We have, right, it's their contract. It's their employment contract here. It's a law of general applicability, the governor's proclamation, and so it's notice and opportunity to comply. The firefighters had notice of the proclamation, and they had time to comply because, in fact, they filed their TRO before they had to comply with the governor's proclamation. So let's go to why the hearings are not a sham. Your Honor already brought this up. What are the bald legal conclusions that they have that this is a sham hearing? It's a sham hearing. That's what they said. Well, so, yeah, I need to go back to the complaint, but did they allege that every determination was, you know, the same, there were no accommodations made? Well, so let's go to that part of the record because I think it's important. So at 10 ER 2310, right, this is a document that the plaintiffs put before Judge Rice. Now, it was part of the TRO, but it's Exhibit A to Firefighter Thorman's declaration. So this was before Judge Rice. It was a pleading, and this is a letter from the HR department of the city of Spokane to a firefighter talking about how his exemption has been accepted, and we're going to now go through the accommodation process that the proclamation requires under Title VII. And to say that they were not accommodated is just wrong. As Judge Rice found, they didn't like the accommodations they were given, but some of the accommodations laid out in the record as put in the record by the plaintiffs are a reassignment of options. In fact, some of these firefighters were reassigned as dispatchers or fire inspectors. Essential function layoff. But some were dismissed? Some chose to retire, Your Honor. That was one of the accommodations that they were offered. Some chose to retire. But I can tell you this is not in the record because this happened after the TRO. I can tell you a number of them have been rehired after the governor's proclamation was rescinded. A number of them have been promoted. So they had the process that was due, and we need to think about what that process is and what the Ninth Circuit precedent says it's notice and compliance, and that's what Judge Rice found. But even if you get beyond their bald, conclusory allegations of sham, the record before Judge Rice, which was appropriate for him to consider under Shabby Hawn, which we cite, shows not only that they had the option. But this was a judgment on the pleadings. It wasn't summary judgment. That's correct. It was a judgment on the pleadings. So why was this other? How did this other stuff get in in the pleadings? So these were all pleadings that were submitted as part of the TRO process at the beginning of the case. And if you look at Shabby Hawn, it's a very applicable case here, quickly because I want to deal with the First Amendment, Your Honor. But in Shabby Hawn, a judge relied on another court's ruling on a Bashton issue in another case to affirm the district court's 12B6 motion. And so in this case, it's even better. It was here is the same judge, the same case, mostly pleadings, put in the record by the plaintiffs to totally undermine their bald and conclusory allegations, which you know Iqbal allows us to dismiss. Let me ask one quick question. Hopefully you can respond with a yes or no. Would any of the firefighters who claim to have been adversely affected in terms of employment, reinstatement, loss of retirement credit, et cetera, under the constraints of Judge Rice's order, be able to pursue those claims in state court? Yes, Judge Wright. Thank you. Yes. Thank you. And I guess the one other piece that I haven't referred to that was in the record before Judge Rice, and in fact he relied on in his order for the TRO, so it's part of his order record, is that 4ER637. And that's a letter from the city HR after these hearings saying, here's how we considered what you suggested, and here's why the city doesn't think that's appropriate. So we need to set the record straight in terms of what actually happened here. Exemptions were granted for all 25 firefighters. And when you say exemptions were granted, is that rolling into your First Amendment claim or no? Yes. When we talk about exemptions, we need to talk about the First Amendment. I'm just going through the two-step process. Exemptions were granted, step number one, and then the accommodation process was gone through, which is step number two. And so under that, so let me roll into the First Amendment unless there's any questions about due process, Your Honor. No. Yeah, I'd like to hear on the First Amendment. Okay. Because as I understand it, exemptions were granted, meaning, and that was fairly uniform, saying, okay, we understand you have a religious exemption, so then what? Then this was a discussion of, okay, what accommodation are we going to do? And as I understand it, the accommodation was not, you're fine, just keep doing what you're doing because of your religious concern, you don't have to get the vaccine. That was not one of the accommodations. Correct. That was not one of the accommodations. Let's talk about what the proclamation, right? This is the city of Spokane. This is the fire chief. This is the mayor. You're operating under the state proclamation. Exactly. This is not our proclamation. This is the fire department, the city of Spokane, trying to apply the governor's order and doing it the best we can. And what it says is for exemptions, you look at the exemptions for disability, look at the ADA, apply that rubric and framework. Exemptions for religious exemptions, look at Title VII of the Civil Rights Act. And so that's what we did, Your Honor. So when we did the analysis, when the city did the analysis under the proclamation, we talked about discretion. There was not unfettered discretion. There was not, quote, unquote, from the reply brief at 8, absolute discretionary authority in the accommodations process. It was bound by law. Okay. So that's fair. But then how do you get in? I mean, how on the pleadings do you dismiss 25 exemptions? I didn't see the district court walk through each one and say, did this comply with Title VII or not. Because you have to go back to First Amendment, right, Your Honor? I think you've got to keep First Amendment analysis separate from the due process analysis, right? What process are they due? We already talked about that in Laudermill. Now we're talking about the exemptions under the First Amendment. So here's where I think the point is, it seems like there's an acknowledgement that these individuals, at least some of them, raised a religious exemption. It was granted. And the religious exemption was we don't want to take the vaccine. And then they were demoted. Demoted? I mean, you're not disputing that some of them were demoted or reassigned as an accommodation. That's correct. That's correct. But I think the two are getting meshed inappropriately, and here's why. When we look at the check. But why didn't you just say, okay, you don't have to get the vaccine? Other, it sounds, do you disagree that other departments were doing that? In fact, the county was doing that? Some counties made that decision based on their accommodation analysis and analyzing the risk for their particular department. But is it true that because of arrangements with surrounding fire departments that there were, from other surrounding communities, firefighters who were working within the city who were not vaccinated? That is what they alleged in their complaint, Your Honor. Well, let me go back to that. So the question he had was, is that rational? Is it rational to say, you know, if you work for the city, you have to be vaccinated, but we'll let you under these joint sharing arrangements come in if you're not vaccinated so long as you work for another county. It all starts to sound very arbitrary. The city applied across the board, even-handedly, the religious exemptions for its employees. Was there any requirement that your clients look to what other entities were doing? No, Your Honor. The requirement was that we follow the accommodation procedure under the ADA and Section 7 of the Civil Rights Act. But I don't understand how the accommodation analysis wouldn't be affected by that. I mean, it doesn't make sense to say, well, you, we're going to demote you, but this other individual we're going to allow to do your same job without a vaccine. If they wanted to assert that claim, they should have brought a Title 7 claim. They never did. They never pled it. Well, they did bring a Title 7 claim. No, they did not, Your Honor. No Title 7 claim. It's not in the complaint. They haven't asked for leave to amend it. I see that I'm out of time. I would. I thought they brought a Title 7 but didn't exhaust. Well, they brought an ADA claim and didn't exhaust. I see. At the TRO stage, Judge Rice construed their pleadings for a Title 7 claim, right, and dismissed it. But they never, in the six months between when the claim, the TRO was granted and we moved for judgment on the pleadings, they didn't do anything to rectify that. Judge Collins. I'm trying to understand on the religious exemption. So for the religious exemption, if the objection is to taking the vaccine, that's the religious objection. It's not accommodated if the state's position is that you still have to get vaccinated. I mean, I'm. The First Amendment doesn't require accommodation. Look at Smith. Look at, oh, what's the case I love? Dang it. Church of. Cain. Cain is the case I love. Look at. Thank you, Selby. Look at those cases, Your Honor. They make clear that under the First Amendment. Because it's a law of general applicability. Yes. Right? It's a neutral law of general applicability. But once they've raised an exemption and you've granted it, I'm struggling with this. Because once you've granted the religious exemption, then it doesn't mean anything. Well, it means, Your Honor. It means you can get demoted. It means you can get reassigned. It means that you're treating religion more favorably than not by allowing an accommodation and exemption to begin with. Well, here it's Title VII. It's a pre-exercise clause. It's in the Constitution. Okay. So let's back up. I don't understand. More favorably than what? More favorably than my personal opinion. More favorably than the political opinion. Yeah. Exactly. Right. You're treating that more favorably by giving them. Exactly. Because the pre-exercise clause says that religious accommodation is protected under the Constitution. And so they get the opportunity to assert that exemption and they get the opportunity to assert that accommodation under Title VII. And then you don't give them anything. That's not true, Your Honor. I just explained to you how we gave them accommodations. They didn't like the accommodations. We gave them. That does not a constitutional First Amendment claim make. It may make a Title VII claim. They haven't raised that. They've waived it. Okay. I think we've got three minutes. Thank you. Good morning. Once again, Your Honors, and may it please the Court, I'm still Andrew Hughes on behalf of, excuse me, appellees Jay Inslee and Robert Ferguson. So this case is, of course, an illustration of how Proclamation 2114 was designed. An employee seeks an exemption, then goes to the employer to engage in the interactive process to determine whether their particular issue, whether it be a disability, whether it be a religious objection, can be accommodated without undue hardship to the employer. This is the classic interactive process that agencies and employers routinely apply in anti-discrimination contexts like Title VII and the ADA. So why are we in this case? Governor Inslee and Attorney General Ferguson intervened because one of plaintiff's claims, their substantive due process claim, implicated the governor's vaccine mandate by alleging that Spokane defendants were denying plaintiffs due process because they were acting pursuant to the governor's proclamation, which plaintiffs believed was illegal. That's the only reason. So you're only here on the substantive due process claim? Correct, Your Honor. Okay. So if we don't think that they have a substantive due process claim, then you don't, I mean, you're not here to defend the other actions? I will accept the invitation to sit down right now, Your Honor, if that's... Well, I'm just trying to clarify that. That's exactly right. That's the only reason we're here. Okay. Sounds like you just got that invitation. Out of an abundance of caution, Your Honor, I will just make my points, which is to say that as Judge Rice found, plaintiffs waived this argument below by failing to address it in their response to the motions for judgment on the pleading. On top of that, to the extent plaintiffs now ask for any relief against the state, Pennhurst and the 11th Amendment bar this court from enjoining any state official action as contrary to the law or awarding any damages against the state. And finally, on top of all of that, for all the reasons outlined in our brief, the proclamation's prohibition on working in certain public-facing sectors without a vaccination was plainly a lawful exercise of the governor's broad discretionary authority to prohibit activities he reasonably believes should be prohibited to help preserve and maintain life, health, property, or the public peace. That's RCW 4306-220H. For any and all of these reasons, Your Honors, Governor Inslee and Attorney General Ferguson respectfully request the court dismiss plaintiff's appeal with respect to them as moot or alternatively affirm the district court. Okay. Thank you. Thank you. And now we have time for rebuttal. Thank you, Your Honor. Choosing to retire or be terminated is not an accommodation. Neither is demotion or reassignment. And the city of Spokane says they were doing the best they can or the best they could. But the fire departments literally, you know, down the street were able to accommodate people, employ their people unvaccinated without violating their religious conscience. So even if the city did apply the proclamation as they stated even-handedly, our position is they did it even-handedly but wrong. And I guess my problem here is that this was a judgment on the pleadings, right? And so you never even had the opportunity to make all these arguments and show the disparate treatment or any of that. And I guess I'm wondering why you shouldn't be given that opportunity. Yes, Your Honor. And I believe that at minimum we should have been allowed to amend to the extent there were any defects in the pleading. Title VII was addressed by Judge Rice below. And, again, I think it's a very important point. I don't mean to repeat myself but to reemphasize it. But you didn't ask to amend until after the scheduling order deadline had passed, right? I am not certain. I'm sure you're correct, Your Honor. As I understand it, March 2nd was the deadline and you didn't ask to amend until June 6th. So you have to show good cause. But, I mean, I'm not – I think the question for us is whether you've alleged a First Amendment violation on the pleadings and whether that should have gone forward. And, of course, my position is we have and it should have gone forward, Your Honor. And I would say that, again, even on a rational basis analysis, not only are there the neighboring fire departments but AMR, the city's only ambulance service, allowed unvaccinated individuals doing the exact same EMT roles as my clients. So – and we also – I'll also point out that I – I mean, does that show – what they were doing, does that show that – I mean, did they have an obligation to look to what others were doing and comply with how they were applying it? If the government is going to use its authority to seriously damage someone's property interest in their career and have them make a decision between their livelihood and their religious beliefs, I certainly do think that they should look at minimum the rationality of that decision where there are unvaccinated EMTs. And in at least one instance with my clients, one of them went and worked for that ambulance company doing the same job. And I apologize. We're over. But I just want to make clear that the religious exemption – I mean, everybody agreed there was a religious exemption. So that's not before us about whether there actually should have been a religious exemption or not. The only question is have – accepting that was an accommodation – was there a proper accommodation given? That's correct, Your Honor. And I think it's very important because by accepting that exemption request, the city therefore conceded that my clients' religious beliefs were sincere. So we're not going to go into that at the trial court and – or here, Your Honor. Okay. Thank you. Thank you, Your Honor. We've got your arguments. The case has been submitted.
judges: HAWKINS, NELSON, COLLINS